# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | | |
|---|---|---|
| COMMONWEALTH OF VIRGINIA, | : | |
| | : | |
| v. | : | Case No.: 1:21-cr-92-CMH |
| | : | |
| LUCAS VINYARD, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT LUCAS VINYARD'S REPLY TO THE COMMONWEALTH'S OPPOSITION TO HIS MOTION TO DISMISS

Defendant, Lucas Vinyard, through counsel, HANNON LAW GROUP, LLP, respectfully presents this reply to the Commonwealth's opposition to his motion to dismiss the indictments.

## INTRODUCTION

The facts of this case, as the FBI learned through its investigation, do not support any charges against Ofc. Vinyard and the law is even stronger—the Constitution forbids the Commonwealth from prosecuting federal officers performing their federal duties. From the day the Commonwealth's Attorney held a press conference announcing the indictments, Ofc. Vinyard has waited to see why the Commonwealth believed otherwise. The Commonwealth told the Court it needed five days to present all its evidence in opposition to Ofc. Vinyard's immunity defense. Was there something the FBI overlooked? Was there some obscure case law that permitted the state prosecution? The Commonwealth's opposition is the first time it has had to explain the grounds for its prosecution. As it turns out, the FBI and Department of Justice were right.

The Commonwealth does not raise a single factual dispute in its opposition. It does not dispute that Bijan Ghaisar's actions threatened the life of Ofc. Amaya and it does not dispute that it was reasonable for Ofc. Vinyard, in the split-second he had to react, to believe it was necessary

to shoot Mr. Ghaisar to protect Ofc. Amaya. In fact, the Commonwealth's argument does not address the shooting at all. Nor does the Commonwealth identify a single legal authority that would allow it to proceed to trial on these indictments.

Instead, the Commonwealth's entire case for stripping Ofc. Vinyard of his federal immunity rests on supposed policy violations during the 20-minutes that Mr. Ghaisar led local and federal law enforcement on a chase down the George Washington Parkway and into a residential neighborhood. The Commonwealth says Ofc. Vinyard should stand trial for involuntary manslaughter because he positioned his patrol car in front of Mr. Ghaisar's Jeep, instead of behind it, and because he initiated the pursuit without knowing for "certain" that Mr. Ghaisar's hit-and-run accident caused $1,000 in damages. Most outrageously, the Commonwealth claims that Mr. Ghaisar—who had just been involved in a hit-and-run, was observed speeding, crossing the double-yellow line into oncoming traffic, driving recklessly, and exhibiting signs of intoxication, *all while fleeing arrest*—posed no threat to the public and Ofc. Vinyard should have simply let him go.

None of this is relevant to whether it was "necessary and proper" for Ofc. Vinyard to later shoot Mr. Ghaisar as he drove his car at Ofc. Amaya. But it is also wrong. The undisputed facts show that Ofc. Vinyard acted within his authority and consistent with agency policies. More importantly, courts across the country have addressed and rejected all the Commonwealth's arguments as legally insufficient to defeat a claim of federal immunity. Rather than acknowledging those cases and explaining to this Court why it should blaze a new trail, it simply pretends those authorities do not exist.

In fact, despite asking the Court to schedule a five-day evidentiary hearing, the Commonwealth does not claim that any factual dispute exists that would justify a hearing at all.

The closest it comes is claiming in a footnote that the Department of Justice is now cooperating with its prosecution and that it is still reviewing all the new evidence they received. But the Commonwealth has since admitted to Ofc. Vinyard's counsel that this is entirely false and that it has in fact received no new evidence. Rather than correct the record through a public filing, the Commonwealth has decided to wait until the hearing to quietly inform the Court.

The Commonwealth describes Supremacy Clause immunity as an "exceptional" defense, but the only thing exceptional about this case is that the Commonwealth has pursued it.

## ARGUMENT

### I. THE COURT SHOULD GRANT OFC. VINYARD'S MOTION WITHOUT TAKING ANY ADDITIONAL EVIDENCE.

In two important respects, the Commonwealth misconstrues the legal standard and process for ruling on Ofc. Vinyard's motion to dismiss. First, the Commonwealth asserts that Ofc. Vinyard "failed to eliminate any genuine dispute," and generally faults him for not offering evidence in support of his motion. Opp. at 23. This improperly shifts the Commonwealth's burden of production to Ofc. Vinyard. Ofc. Vinyard is only required to file a motion that raises "a threshold defense of immunity." *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004). "The State bears the burden of 'com[ing] forward with an evidentiary showing sufficient at least to raise a *genuine* factual issue whether the federal officer was . . . doing no more than what was necessary and proper for him to do in the performance of his duties.'" *Id.* (original alterations) (quoting *Com. of Ky. v. Long*, 837 F.2d 727, 752 (6th Cir. 1988)). If there are no disputed material facts, the Court "is free to rule without taking evidence or holding a testimonial hearing." *California v. Dotson*, 2012 WL1904467 at *2 (S.D. Cal. May 25, 2012) (unpublished). *See City of Jackson v. Jackson*, 235 F. Supp. 2d 532, 534 (S.D. Miss. 2002) (Court "should grant

the motion in the absence of an affirmative showing by the [Commonwealth] that the facts supporting the immunity claim are in dispute").

The Commonwealth's second error is that it assumes that if there are disputed facts, the motion should be denied and the defense submitted to the jury at trial. But as discussed in Ofc. Vinyard's motion, courts agree that the proper mechanism to raise a Supremacy Clause immunity defense is Federal Rule of Criminal Procedure 12(b)(1). Under this rule, "[a] party may raise by pretrial motion any defense . . . that the *court can determine without a trial* on the merits." Fed. R. Crim. P. 12(b)(1) (emphasis added). This is not a Civil Rule 56 motion for summary judgment. The plain language of the rule makes clear that the defense should be determined by the court pre-trial and neither party cites any case where the question of federal immunity was submitted to a jury.

Instead, where the state does raise a genuine dispute about a material fact, the court must resolve that dispute and then rule on the motion. *See Idaho v. Horiuchi*, 253 F.3d 359, 374 (9th Cir.) (*en banc*), *vacated as moot*, 266 F.3d 979 (9th Cir. 2001) ( "factual issues must be resolved by the district court prior to trial"); *Arizona v. Files*, 36 F. Supp. 3d 873, 876 (D. Ariz. 2014) (resolving question of "who decides whether the defense applies—judge or jury?" by following *Horiuchi*). In *Horiuchi*, the Ninth Circuit explained the "significant policy reasons" for this approach:

> To begin with, the question of Supremacy Clause immunity, while very similar to the issues presented in the criminal case, is nevertheless quite distinct. While the jury must decide the case under state law, Supremacy Clause immunity is a matter of federal law. The state standard for justification may or may not be the same as the federal standard, and asking the jury to apply two similar-yet distinct-legal standards to the same set of facts can only lead to confusion. By contrast, federal judges, versed in the subtleties of federal immunity law, are well equipped to make factual findings and legal conclusions. These rulings can then be reviewed on appeal much more easily than a jury verdict which, after all, is almost entirely opaque.

4

> Perhaps most significant, however, is the fact that having the district court hear the evidence and make factual findings before the state prosecution can go forward will act as a substantial safeguard against frivolous or vindictive criminal charges by states against federal officers. As experience with qualified immunity cases shows, if merely presenting a disputed issue of fact were sufficient to get to a jury, then state prosecutions of federal agents could become quite common. Such prosecutions-whether successful or not-place a heavy burden on the agent charged and the agency that employs him.
>
> It's true that, in the civil context, we have held that the disputed factual issues underlying the immunity defense must be put to the jury. But criminal liability threatens the officer personally in a way that civil liability does not and so calls for a more cautious approach.

*Horiuchi*, 253 F.3d at 374 (internal citations omitted). This procedure is no different than courts routinely apply to double jeopardy claims, attorney-client privilege, and other evidentiary matters. *Id.*

Here, the Court should rule on Ofc. Vinyard's motion without holding a hearing because there are no factual disputes to resolve. Ofc. Vinyard put forth a detailed statement of facts, all based on a two-year investigation conducted by the FBI, the results of which are at the disposal of both parties. It does not appear that the Commonwealth has conducted any investigation of its own, and rests entirely upon the investigation conducted by the FBI. The Commonwealth does not claim that any fact identified by Ofc. Vinyard is incorrect, nor does it offer any new facts that Ofc. Vinyard disputes. Although the Commonwealth couches its arguments as establishing factual disputes, it merely offers different interpretations or conclusions of the undisputed facts. For example, the Commonwealth claims there is a factual dispute as to whether Ofc. Vinyard followed United States Park Police General Orders. But there is no dispute about what Ofc. Vinyard did or what the General Orders say. The Commonwealth simply offers its own interpretations and conclusions about whether his actions complied with the Orders.[1] The Court

---

[1] In footnote 5, the Commonwealth disputes Ofc. Vinyard's statement that dispatch instructed him to pursue Mr. Ghaisar, noting that at one point, dispatch *asked* if he was in pursuit. Again, this is nothing more than opposing

5

can simply view the undisputed facts and reach its own conclusion. No evidentiary hearing is necessary.

## II. OFC. VINYARD WAS PERFORMING AN AUTHORIZED ACT.

In the face of more than a hundred years of case law broadly interpreting the "authorized act" element of Supremacy Clause immunity, the Commonwealth asks the Court to adopt an extraordinarily narrow view. It contends that unless the officer can prove that no reasonable person could find that he violated any policies, he cannot be immune from state prosecution. It brazenly presents this as a truism, without even acknowledging the cases that have considered and rejected that very argument.

Still worse, the Commonwealth argues that Ofc. Vinyard cannot be immune from state prosecution because it accuses him of violating the defendant's Fourth Amendment rights and because he was indicted for involuntary manslaughter and reckless discharge, crimes that include an element of *mens rea*. But this is obviously true of every federal immunity case and if the Commonwealth were correct, immunity would cease to exist. Unsurprisingly, the Commonwealth cites no federal immunity case that supports its argument. *See Files*, 36 F. Supp. 3d at 878 ("The focus of the necessary and proper inquiry is not whether, in fact, the federal officer's conduct was lawful; this Court must instead determine whether Files 'employed means which he could ... honestly consider reasonable in discharging his duties'").

### A. Policy Violations Cannot Defeat Immunity.

First, the Commonwealth contends that Ofc. Vinyard violated various USPP policies governing pursuits, arrests, roadblocks, and the use of force, and therefore was not performing an

---

interpretations of the undisputed evidence. The dispatcher called the officers on the radio, stated that a hit-and-run occurred, described the vehicle that left the scene and where it was last seen. It later asked the officers if they were in pursuit. The entire recording is included in the Summary Presentation the Commonwealth submitted to the Court. The Court can decide whether this was idle chatter or an instruction to find the Jeep.

authorized act. The Commonwealth does not cite a single case where such violations stripped a federal officer of immunity. Instead, all relevant authorities hold the opposite. Courts across the country have recognized that "[c]onduct may be within the scope of a federal officer's authority even if of 'questionable legality,'" *Files*, 36 F. Supp. 3d at 878, and even if "his acts may have exceeded his express authority," *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977). *See Wyoming v. Livingston*, 443 F.3d 1211, 1219 (10th Cir. 2006) (noting that Supreme Court authority gives "grants of federal authority a generous sway"); *Com. of Ky. v. Long*, 637 F. Supp. 1150, 1152 (W.D. Ky. 1986), *aff'd,* 837 F.2d 727 (6th Cir. 1988) ("Even if Long acted outside the guidelines by failing to report the informant to his superior or failing to obtain permission from his superior before the informant participated in the burglary, those are not grounds to charge Long"). So long as the officer's actions bear some reasonable relation to his duties and he did not act out of personal interest, courts have uniformly found the first element of immunity satisfied. *Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982) (finding "no suggestion that Baucom acted because of any personal interest, malice, actual criminal intent, or for any other reason than to do his duty as he saw it"); *Clifton*, 549 F.2d at 728 (question is "whether the official employs means which he cannot honestly consider reasonable in discharging his duties or otherwise acts out of malice or with some criminal intent").

In *Clifton*, the Ninth Circuit explicitly rejected the Commonwealth's argument. There, DEA agents landed in a helicopter to execute an arrest warrant. Clifton exited the helicopter, kicked down the door, saw a man flee into the woods, and shot him in the back. *Clifton*, 549 F.2d at 724. The state argued that because Clifton violated DEA regulations prohibiting agents from shooting fleeing suspects, Clifton's conduct was not "authorized." *Id*. at 726. The Ninth Circuit disagreed. It held that "even though his acts may have exceeded his express authority,

7

this did not necessarily strip petitioner of his lawful power to act under the scope of authority given to him under the laws of the United States." *Id*. at 728.

Courts reached the same conclusion in *Files* and *Long*. In *Files*, the district court found that the federal officer violated agency policies both in obtaining permission to trap his neighbor's dog and in the course of setting the trap. *Files*, 36 F. Supp. 3d at 883. The court nevertheless held that his conduct was "authorized" because, "for purposes of the 'scope of authority' inquiry, the evidence shows an urban specialist is generally authorized to trap domesticated animals." *Id*. In *Long*, the district court found that even if the officer violated agency guidelines by failing to obtain prior approval from his supervisor, the officer was still immune because "[t]he test on what is 'necessary and proper' is a subjective one and goes to whether the defendant reasonably thought his conduct was necessary and justifiable." *Long*, 837 F.2d at 741.

In *California v. Dotson*, the U.S. District Court for the Southern District of California explained why policy violations cannot strip a federal officer of his immunity. There, a federal law enforcement officer in pursuit of a suspect drove 100 mph and blew through a stop sign, colliding with a van and killing three of its occupants. *Dotson*, 2012 WL 1904467, at *1. The prosecution argued that the officer's "driving was in direct violation of ICE policies" and that "by not following the ICE driving policies, failing to slow down, and running the stop sign, his actions were unreasonable." *Id*. at *3. The district court disagreed and warned that accepting the prosecution's argument "would send a chilling message to law enforcement and the community, that variance from procedures and policies or variance from traffic controls should inhibit law enforcement in the discharge of their duty to protect the public in emergent of exigent situations." *Id*. at *4.

The only difference between these authorities and the instant case is that the alleged policy violations here are even less relevant because they are unrelated to the alleged criminal act. The Commonwealth does not claim that Ofc. Vinyard violated any policies when he shot Mr. Ghaisar to protect Ofc. Amaya. It merely contends that he should have behaved differently during the 20-minute chase that preceded the shooting.

Nevertheless, the Commonwealth does not address these authorities at all and cites no other federal immunity cases to support its argument. It simply hopes that this Court will accept its arguments uncritically and set a new precedent that any minor deviation from policy could subject federal officers to prosecution in state court. The Court should decline the Commonwealth's invitation to deviate from well-settled law and to send a chilling message to law enforcement and the community that police are now inhibited by any variance from policy when protecting the public from criminals.

**B.  Officer Vinyard did not Violate any USPP Policies.**

Even if the Court could consider policy violations, the Commonwealth does little more than raise questions about whether Ofc. Vinyard correctly judged that his conduct was authorized. For example, the Commonwealth contends that Ofc. Vinyard was not authorized to initiate the pursuit of Mr. Ghaisar because it was "far from clear" that he committed a felony, rather than a misdemeanor hit-and-run. Opp. at 13. But the policy the Commonwealth accuses Ofc. Vinyard of violating only requires a "reason to believe" a felony occurred. General Order 2205.01 (ECF #12-1). Ofc. Vinyard was not required to obtain an estimate for repairs before pursuing the suspect. The instruction from dispatch to be on the lookout for Mr. Ghaisar, the knowledge that Mr. Ghaisar was in a hit-and-run accident on the George Washington Parkway, and his refusal to stop when Ofc. Vinyard first encountered him, provided sufficient "reason to believe" a felony occurred. In fact, the pursuit policy identifies "speed[ing]" and "hit-and-run"

9

as grounds to pursue a suspect. General Order 2205.04(A)(9)(a) (ECF #12-1). The Commonwealth has not offered any evidence from which this Court can find that it was unreasonable for Ofc. Vinyard to believe his pursuit was justified.

Moreover, even in the absence of a felony, the Commonwealth admits that Ofc. Vinyard could pursue a motorist that "presents a clear and immediate threat to public safety[.]" Opp. at 13. The Commonwealth merely questions his judgment—as well as the judgment of the dispatcher who instructed him to be on the lookout for Mr. Ghaisar, his supervisors who permitted the pursuit to continue, and the Fairfax Police who joined the pursuit—that a motorist who already collided with another person and then fled poses a threat to public safety. While Ofc. Vinyard maintains that the threat to public safety was clear, at best the Commonwealth alleges a mistake in judgment that is legally insufficient to strip him of immunity. As the Eleventh Circuit explained in *Baucom*, "[e]ven if the officer makes an error in judgment in what the officer conceives to be his legal duty, that alone will not serve to create criminal responsibility in a federal officer." *Baucom*, 677 F.2d at 1350. *See Clifton*, 549 F.2d at 727 ("errors of judgment in what one conceives to be his legal duty will not, alone, serve to create criminal responsibility of a federal officer").

The same goes for Ofc. Vinyard's decision to continue the pursuit beyond USPP primary jurisdiction. The Commonwealth says Ofc. Vinyard violated policy that required him to relinquish the pursuit to the assisting Fairfax Police officers "[a]s soon as practical."[2] General Order 2205.04(B)(4) (ECF #12-1). But this plainly affords Ofc. Vinyard discretion in determining when it is practical to relinquish the pursuit. Ofc. Vinyard chased Mr. Ghaisar outside his primary jurisdiction for approximately 60 seconds. During that time, Mr. Ghaisar

---

[2] The Commonwealth does not say how or when Ofc. Vinyard should have relinquished the pursuit.

was driving at a high speed down a two-lane road in a residential neighborhood. When Mr. Ghaisar finally stopped, the assisting Fairfax Police officer, Lt. Gohn, stayed in his cruiser in case he took off again. There was no opportunity to relinquish the pursuit. In fact, while the Commonwealth claims Ofc. Vinyard "refused" to yield, Lt. Gohn told the FBI that when the pursuit entered Fairfax County, it would remain the Park Police's pursuit, and he would continue to support them. The Commonwealth offers no evidence from which the Court could conclude that Ofc. Vinyard should have relinquished the pursuit within 60 seconds of leaving his primary jurisdiction, and even if it did, it would establish nothing more than a mistake in judgment by Ofc. Vinyard about his compliance with USPP policy.

The Commonwealth's arguments about arrest authority are no better. First it claims Mr. Ghaisar might not have fled "to avoid arrest" but because he was afraid of Ofc. Vinyard. Opp. at 15. The Commonwealth offers no evidence whatsoever to support this supposed intent of Mr. Ghaisar. To the contrary, it is undisputed that Mr. Ghaisar was involved in a hit-and-run, was pursued by multiple police vehicles with their emergency lights flashing, and that he stopped three times only to speed away as the officers approached his vehicle. These undisputed facts are sufficient to prove that Mr. Ghaisar was fleeing arrest. *United States v. Fox*, 147 F. Supp. 2d 1008, 1010 (N.D. Cal. 2001) ("when defendant failed to stop in response to [Park Police officer], though she had the opportunity to do so, but instead traveled about 200 yards through the Presidio before coming to a stop about one block outside the gate, she was fleeing to avoid arrest").

Perhaps most concerning is that the Commonwealth tells this Court that a Park Police officer cannot arrest a motorist who was fleeing a hit-and-run, speeding, driving recklessly, and suspected of being intoxicated, because those offenses are governed by state, not federal law.

11

Opp. at 16. This is plainly incorrect. Interior Department regulations adopt state traffic law, 36 C.F.R. § 4.2, and the Assimilative Crimes Act, 18 U.S.C. § 13, federalizes all other state law on federal land. *See United States v. Maccado*, 99 F.3d 1132 (4th Cir. 1996) (unpublished) (upholding conviction of motorist arrested by U.S. Park Police officer for driving without a license on the George Washington Parkway in violation of 36 C.F.R. § 4.2, assimilating Va. Code. § 46.2-301); *United States v. Luther*, No. 1:14CR330, 2015 WL 853906, at *4 (E.D. Va. Feb. 26, 2015) (U.S. Park Police authorized to make warrantless arrest at suspect's home for drunk driving on the George Washington Parkway; also recognizing fleeing to elude, a state crime under Va. Code § 46.2-817, is a federal offense by the adoption of State law in 36 C.F.R. § 4.2); *United States v. Chapman*, 321 F. Supp. 767, 768 (E.D. Va. 1971) (permitting federal prosecution of defendant arrested by U.S. Park Police at Washington National Airport for possession of marijuana, in violation of Virginia law, under the Assimilative Crimes Act). Moreover, Virginia law specifically designates Park Police officers as "conservators of the peace" and gives them the same arrest authority as local police officers. *See* Va. Code § 19.2-18-22. Surely, the Commonwealth must know this; it routinely prosecutes defendants arrested by Park Police officers for violations of state law.[3]

### C. The Alleged Constitutional Violations and Indictments do not Defeat Federal Immunity.

The Commonwealth also asserts that Ofc. Vinyard lost any claim to immunity by violating Mr. Ghaisar's Fourth Amendment rights and by acting with criminal intent. It asserts that under *Tennessee v. Garner*, an officer cannot shoot a suspect *solely* because he fled an

---

[3] The Commonwealth's other arguments do not warrant discussion. Stopping his cruiser in front of the Jeep, rather than behind it, did not create a "roadblock" as that term is used in USPP General Order 2210. And the Commonwealth completely misunderstands Ofc. Vinyard's motion if it believes he "bases his use of deadly force on 'a possible Class 5 felony." Opp. at 17. He bases his use of force on Mr. Ghaisar driving his car at Ofc. Amaya.

12

arrest. It also argues that because Ofc. Vinyard was indicted for crimes that include a *mens rea* element, he acted with "criminal intent" and therefore is not immune. The errors in this argument are extraordinary.

First, every claim of federal immunity by officers charged with murder or manslaughter, from *Neagle* to *Kleinert*, involved allegations that would violate the Fourth Amendment and indictments that included some form of criminal *mens rea*. Nearly every one of those cases held that the officer was immune. In fact, in *Tanella* and *Clifton*, the Second and Ninth Circuits upheld federal immunity defenses where the officers shot fleeing suspects in the back. Yet the Commonwealth does not even attempt to explain why the allegations here would defeat Ofc. Vinyard's claim of immunity when it did not defeat that defense in *Neagle, Kleinert, Tanella, Clifton, Reed, Laing, Dotson, Cain, Warner, or Lipsett*. *See* Vinyard Mot. at 25.

Second, the entire purpose of federal immunity is to prevent states from interfering with federal operations by charging its agents with state crimes. Yet the Commonwealth contends that Ofc. Vinyard is not immune *because* he was indicted. What protection would federal immunity provide if it does not apply when an officer is indicted for committing a crime? The argument is nonsensical.

Moreover, the Commonwealth says that Ofc. Vinyard is not entitled to immunity because the "indictments allege" that he acted with reckless disregard for Mr. Ghaisar's life and that "*[i]f* Vinyard exhibited culpable recklessness . . . that is sufficient to strip him of Supremacy Clause immunity." Opp. at 21. But it is "a basic principle of law that an indictment is not evidence," *Long*, 637 F. Supp. at 1151, and "the State cannot meet its burden 'merely by way of allegations,'" *Tanella*, 374 F.3d at 148 (quoting *Long*, 36 F. Supp. 3d at 883).

13

Finally, the Commonwealth's argument is so detached from Ofc. Vinyard's claim of immunity that one must wonder whether it even read the motion it claims to oppose. The Commonwealth argues that Ofc. Vinyard violated Mr. Ghaisar's Fourth Amendment rights because he cannot shoot a suspect solely for fleeing arrest. Ofc. Vinyard never claimed that he shot Mr. Ghaisar for fleeing. Ofc. Vinyard shot Mr. Ghaisar because he drove his car at Ofc. Amaya. This is the crux of the entire case and somehow the Commonwealth ignores it entirely. It presents no evidence or argument whatsoever about whether Mr. Ghaisar posed a threat to Ofc. Amaya that reasonably caused Ofc. Vinyard to believe it was necessary and proper to shoot him. The Commonwealth accuses Ofc. Vinyard of violating the Fourth Amendment but does not even address *Waterman*, the controlling Fourth Circuit precedent that held it is reasonable *as a matter of law* for officers to shoot at a slowly moving vehicle headed in their general direction and that doing so does not violate the Fourth Amendment.

The Commonwealth raises no factual dispute and presents no argument that is legally sufficient to defeat Ofc. Vinyard's claim of federal immunity. The Court should grant his motion and dismiss the indictments without hearing any further evidence.

**III.   OFC. VINYARD DID NO MORE THAN WAS NECESSARY AND PROPER.**

The Commonwealth contends that Ofc. Vinyard is not entitled to immunity because he did not reasonably believe that his actions were necessary and proper to carry out his federal duties. It challenges both the subjective and objective components of this element.

    **A.   Officer Vinyard's Subjective Belief.**

The Commonwealth's argument regarding Ofc. Vinyard's subjective belief misconstrues the applicable burdens. As explained above, a defendant raising a federal immunity defense bears no evidentiary burden at all. Instead, "the party seeking to impose liability has the burden of producing evidence 'sufficient at least to raise a *genuine* factual issue whether the federal

officer was . . . doing no more than what was necessary and proper for him to do in the performance of his duties.'" *Colorado v. Nord*, 377 F. Supp. 2d 945, 951 (D. Colo. 2005) (quoting *Tanella,* 374 F.3d at 148.)

None of the cases the Commonwealth cites impose any evidentiary obligation on the defendant. In *Tanella*, the officer filed a motion to dismiss without any supporting evidence and the *state,* attempting to satisfy *its* evidentiary burden, provided the court a copy of his grand jury testimony. *New York v. Tanella*, 281 F. Supp. 2d 606, 611 (E.D.N.Y. 2003), *aff'd,* 374 F.3d 141 (2d Cir. 2004). In *Files*, the officer filed a motion to dismiss without any evidence of his subjective intent. Def.'s Mot. to Dismiss, *Arizona v. Files*, 36 F. Supp. 3d 873 (D. Ariz. 2014) (No. 2:13-CR-436), attached as Exhibit 1. As in *Kleinert*, the officer did testify during an evidentiary hearing, but nothing in the court's decisions suggests that he was required to do so. Similarly, in *Long*, not cited by the Commonwealth, the officer filed a motion to dismiss without any supporting evidence and the defendant's statement to FBI agents was offered as evidence by the State, not the officer. *Long*, 637 F. Supp. at 1151.

The Commonwealth complains that Ofc. Vinyard has not "substantiated" his subjective belief, but these cases demonstrate that an officer bears no evidentiary burden in raising his immunity defense. The question at this stage is whether there is any factual dispute for the Court to resolve. If the Commonwealth offered evidence to show that Ofc. Vinyard's subjective belief was genuinely disputed, Ofc. Vinyard could submit the FBI's summary of its interview with Ofc. Vinyard, which the Commonwealth has, and which clearly establishes his subjective belief that his conduct was necessary and proper. Or Ofc. Vinyard could submit an affidavit to that effect. The Court would then resolve the dispute and rule on the motion. But this is unnecessary

because the Department has not offered any evidence to dispute Ofc. Vinyard's subjective intent. In the absence of any factual dispute, the Court must grant the motion to dismiss.

### B. The Commonwealth has not Demonstrated that it was Objectively Unreasonable for Ofc. Vinyard to Believe his Use of Force was Proper.

The most surprising part of the Commonwealth's opposition is its argument that it was unreasonable for Ofc. Vinyard to believe that shooting Mr. Ghaisar was "necessary and proper." It is surprising because the Commonwealth does not discuss the shooting at all. Instead, the Commonwealth argues about whether he violated USPP pursuit and arrest policies during the 20-minute chase prior to the shooting. But as explained above, the law is clear that even when officers violate policies that expressly prohibit the actions for which they are charged, they are still immune. *Files*, 36 F. Supp. 3d at 878 ("The focus of the necessary and proper inquiry is not whether, in fact, the federal officer's conduct was lawful; this Court must instead determine whether Files 'employed means which he could ... honestly consider reasonable in discharging his duties'").

To support its argument that policy violations defeat immunity, the Commonwealth cites *Neagle*, which says no such thing, and a footnote from the Ninth Circuit's vacated decision in *Horiuchi*. In *Horiuchi*, the Ninth Circuit did not hold, as the Commonwealth claims, that actions exceeding the scope of an officer's duty "automatically renders [his] actions improper." The court said that "[f]ederal agents will be immune from state prosecution if they acted in an objectively reasonable manner in carrying out their duties." *Horiuchi*, 253 F.3d at 366. The footnote the Commonwealth relies upon merely notes that there are limits to what is reasonable, noting that "an agent may not torture a kidnapper to reveal the whereabouts of his victim, even though he believes it necessary to perform his job." *Id.* Ofc. Vinyard is not accused of torturing anybody. He shot Mr. Ghaisar because he drove his car at Ofc. Amaya.

16

Moreover, the Commonwealth alleges that Ofc. Vinyard's conduct was "grossly inconsistent with [his] training," but cites no evidence. It simply says that Ofc. Vinyard received training at FLETC, graduated first in his class, and held a current qualification for his service weapon. The Commonwealth says nothing about the content of that training and does not explain how the training conflicted with Ofc. Vinyard's actions. It then refers the Court to Part I(A) of its brief, which discusses policy violations, not training. In any event, the Supreme Court has squarely rejected this argument in the Fourth Amendment context. In *San Francisco v. Sheehan,* 575 U.S. 600, 616 (2015), Justice Alito explained that "[e]ven if an officer acts contrary to her training . . . that does not itself negate qualified immunity where it would otherwise be warranted." *Cty. & Cnty. of S.F., Calif. v. Sheehan*, 575 U.S. 600, 616 (2015). "Rather, so long as 'a reasonable officer could have believed that his conduct was justified,' a plaintiff cannot 'avoi[d] summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless.'" *Id*. (quoting *Billington v. Smith,* 292 F.3d 1177, 1189 (9th Cir. 2002)) (original alterations).

For the same reason, the Commonwealth's argument that immunity is precluded by the availability of alternative actions by Ofc. Vinyard (such as abandoning the pursuit) also fails. The Commonwealth says nothing about the propriety of the shooting and cites no authority that permits the court to deny immunity based on the availability of alternative actions by the officer. Its argument is similar to the "provocation rule," that was sometimes invoked in Fourth Amendment cases to show that the officer "intentionally or recklessly provoke[d] a violent confrontation." *Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1546 (2017) (original alterations). But the Supreme Court has squarely rejected that argument, too. In *Mendez*, Justice

17

Alito explained that the rule was improper because it "provides a novel and unsupported path to liability in cases in which the use of force was reasonable." *Id.* at 1547. Instead of focusing on the alleged violation, the provocation rule "instructs courts to look back in time to see if there was a *different* Fourth Amendment violation that is somehow tied to the eventual use of force." *Id.* Justice Alito explained that this rule was contrary to the Court's decision in *Graham* because an "excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances . . . not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation such as an unreasonable entry." *Id.*

This is precisely the strategy that the Commonwealth has adopted here. It cannot dispute that Mr. Ghaisar posed a threat to Ofc. Amaya's life that justified Ofc. Vinyard's action. So it argues that Ofc. Vinyard could have avoided the confrontation that resulted in his reasonable use of force. This is legally insufficient to defeat Ofc. Vinyard's claim of immunity.

## CONCLUSION

The Commonwealth does not raise any factual dispute or provide any legal authority to defeat Ofc. Vinyard's federal immunity defense. The Court should grant his motion and dismiss the indictments without hearing conducting an evidentiary hearing.

    Respectfully submitted,

    HANNON LAW GROUP, LLP,

    _____
    Daniel S. Crowley
    Virginia State Bar Number: 79567
    333 8th Street NE
    Washington, DC 20002
    Tel: (202) 232-1907
    Fax: (202) 232-3704
    dcrowley@hannonlawgroup.com
    *Counsel for Lucas Vinyard*

**CERTIFICATE OF SERVICE**

I certify that on this 30th day of July 2021, a copy of the foregoing was served via the Court's electronic filing system on all counsel of record.

Daniel S. Crowley
Virginia State Bar Number: 79567
333 8th Street NE
Washington, DC 20002
Tel: (202) 232-1907
Fax: (202) 232-3704
dcrowley@hannonlawgroup.com
*Counsel for Lucas Vinyard*